EXHIBIT "B"

RECEIVED in apparent good order and condition from Merchant, or Merchant's agent, number of Containers or other packages or units said by shipper to contain the Goods described in the "Particulars Furnished By Shipper", to be transported from the initial port of loading or, if applicable, the final port of loading to the port of discharge, or, if applicable, the place of delivery by on-carrier, there to be delivered to consignee named on reverse or on-carrier upon payment of all charges due thereon. Carrier designated on the front of this bill of lading makes no representation as to the correctness of the particulars furnished by shipper.

In accepting this bill of lading, whether or not signed by Merchant, Merchant expressly accepts and agrees that the receipt, custody, carriage, delivery and any transshipping of the Goods are subject to the terms appearing on the face and back hereof, which shall govern the relations between Merchant and Carrier, it's agents, contractors, employees, master and Vessel in every contingency occurring and whether the Carrier be acting as such or as bailee. The terms hereof shall not be deemed waived by Carrier except by written waiver signed by Carrier or its duly authorized agent.

## 1. DEFINITIONS

"Carrier" means King Ocean Services Limited, Inc. on whose behalf this bill of lading has been issued.
"Container" includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and includes any connected equipment.
"Freight" includes all charges payable to the Carrier in accordance with the applicable tariff and/or service contract and this bill of lading.
"Goods" means the whole or any part of the cargo described on the face of this bill of lading and any packaging accepted from the shipper and includes any Container not supplied by or on behalf of the Carrier.
"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February 1968, but only if such amendments are compulsorily applicable to this bill of lading. (It is expressly provided that nothing in this bill of lading shall be construed as contractually applying the said Rules as amended by said Protocol).
"Merchant" includes the shipper, holder of this bill of lading, consignee, receiver of the Goods, any person owning or entitled to the possession of the Goods or of this bill of lading.
"Vessel" means the ocean vessel named on the reverse hereof and includes any vessel, ship, craft, lighter or other means of transport by ocean or water which is or shall be substituted, in whole or in part, for the vessel named on the reverse hereof.

## 2. CARRIER'S TARIFF.
The terms and conditions of Carrier's applicable tariff are incorporated herein. Copies of the relevant provisions of the applicable tariff are obtainable from Carrier upon request. In the case of inconsistency between this bill of lading and the applicable tariff, this bill of lading shall prevail.

## 3. CLAUSE PARAMOUNT.
This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of 1936 of the United States of America, as amended ("COGSA"), which shall apply to the Goods whether carried on or under deck, to carriage of the Goods to, from or between U.S. ports, or between non-U.S. ports, before the Goods are loaded on and after they are discharged from the vessel, and throughout the entire time the Goods are in custody of Carrier, whether acting as carrier, bailee, terminal operator, inland carrier, stevedore. Carrier shall be entitled to any and all defenses and limitations on liability provided under COGSA and any other compulsorily applicable law for any and all claims arising out of Carrier's custody or control of the Goods. Carrier shall also be entitled to any and all defenses and limitations provided in Carrier's contracts with underlying water or land carriers and all such limitations and defenses are incorporated herein by reference. In addition to the foregoing, Carrier shall not be liable for loss of or damage to Goods resulting from hijacking or piracy.
If this bill of lading is issued in or the Goods are delivered to a locality where there is in force compulsorily applicable legislation similar to the "Hague Rules", then this bill of lading shall have effect subject to the provisions of such legislation to the extent compulsorily applicable. COGSA or the Hague Rules shall be deemed to be incorporated herein. If any term of this bill of lading is held to be repugnant to COGSA, the Hague Rules or any other law, statute or regulation, then such term only shall be null and void to the extent of such repugnance but no further. This bill of lading shall be construed and the rights of the parties hereunder determined according to the laws of the United States.

## 4. PARTIES COVERED.
If the Vessel is not owned by or chartered by demise to Carrier this bill of lading shall take effect, for purposes of limitation of liability only, as a contract either with the owner or demise charterer. If it shall be adjudged that any person other than the owner or demise charterer (including the master, time charterer, agents, stevedores, lashers, terminals and other independent contractors, including inland carriers) is the carrier or bailee of the Goods, or is otherwise liable in contract or in tort, all rights, exemptions, and limitations of liability provided by law and by the terms of this bill of lading shall be available to such persons.

## 5. SCOPE OF CARRIAGE.
Carrier may at any time and without notice to Merchant:
use any means of carriage or storage whatsoever, including railway, road vehicle or inland waterway services;
substitute or employ a vessel, watercraft, vehicle or other means rather than the Vessel named herein to perform all or part of the carriage; proceed via any route at any speed, in or out of the route or in a contrary direction beyond the port of discharge, omit calling at any port or ports whether scheduled or not, and may call at the same port more than once; may before or after proceeding to the port of discharge, make trial trips or tests, make repairs or take fuel or stores at any port in or out of the regular course of the voyage, sail with or without pilots, tow and be towed, and save or attempt to save life, vessels in distress or other property; and all of the foregoing are included in the contract voyage;
load, unload and store the Goods at any port or place (whether or not any such port or place is named herein as the Port of Loading or Port of Discharge);
comply with any orders, directions, requests, or suggestions given by any government or authority or Carrier's insurance company;

Anything done or not done in accordance with sub-clause 5(1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation;

Unless otherwise specified on the face of the bill of lading, Carrier does not guarantee the arrival date;

Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling, and any or all duties whatsoever undertaken by Carrier in relation to the Goods.

## 6. MATTERS AFFECTING PERFORMANCE.
In any situation which, in the judgment of Carrier or the master, is likely to give rise to risk of seizure, arrest, detention, damage, delay to, or loss, of any Goods, the Vessel, crew or Carrier or to make it imprudent or unlawful for any other reason to receive, keep or load the Goods, or continue the voyage, or discharge the Goods, Carrier or the master shall have the right, without prior notice to Merchant,
(a) to decline to receive, keep or load the Goods or to discharge or devan them at any convenient port or place and to require Merchant to take delivery and if he fails to do so, to store them at the risk and expense of the Goods;
(b) to discharge or devan the Goods into any lighter, craft, depot or other place;
(c) to retain the Goods on board until the return trip or until such time as Carrier or the master deems advisable; or
(d) to substitute another vessel or to transship or forward the Goods, or any part thereof, by any means of transport, but always at the risk and expense of the Goods. Any disposition of the Goods pursuant to this clause shall constitute complete performance of this contract by Carrier who shall be free of further responsibility. For all service rendered as herein provided, Carrier shall be entitled to reasonable extra compensation and shall have a lien on the Goods.
Goods shut out or not loaded in a vessel for any reason may be forwarded on a subsequent vessel or by leaderships, lighters, aircraft, trucks, trains or other means in addition to the ocean vessel, or its substitute, to accomplish the carriage herein.

## 7. PACKING OF CONTAINERS-SHIPPER'S GUARANTY-INDEMNITY.
(1) If a Container has not been stuffed by or on behalf of Carrier, this bill of lading shall be a receipt for the Container(s) only and Carrier shall not be liable for loss of or damage to the contents thereof and Merchant shall indemnify Carrier against any injury, loss, damage, liability or expense incurred by Carrier if such exigency has been caused by:
the manner in which the Container has been packed or loaded;
the unsuitability of the Goods for carriage in Containers; or
the unsuitability or defective condition of the Container which would have been apparent upon reasonable inspection by Merchant at or prior to the time the Container was packed or loaded.

(2) Merchant shall inspect Containers before stuffing them and the Merchant's packing or loading of the Containers shall be prima facie evidence of their being sound and suitable for use.

(3) Where Container is stuffed by Merchant or on his behalf, and the Container is sealed when received by Carrier for shipment, Carrier's liability will be limited to U.S. $500 with respect to the contents of each package, except when Merchant declares the value on the face hereof and pays additional charges on such declared value as per Carrier's tariff.

(4) When Container(s) is stuffed by Merchant or his agent, Carrier shall not be responsible for count, weight or measurement of the contents, nor for concealed damage, and the consignee or holder hereof agree that upon delivery, Carrier will be given a receipt for the Container(s) before the shipment is released.

## 8. PERISHABLE GOODS.
Goods of a perishable nature are carried in dry Containers without environmental or atmospheric control or other special services unless the face of this bill of lading notes that the Goods are to be carried in a refrigerated, heated, specially ventilated or otherwise specially equipped Container. This carriage is subject to the special services and charges offered in Carrier's tariff.
Merchant is responsible for bringing the Goods to the proper temperature before loading the Goods into the Containers, for the proper stowage of the Goods within the Container, for setting the temperature (including maintenance and repair), during all times before Containers are delivered to Carrier and after they are delivered by Carrier. Carrier is not responsible for product deterioration caused by inherent vice, defects in the merchandise or transit times in excess of the product's shelf life. Refrigerated, heated, specially ventilated or otherwise specially equipped Containers are not equipped to change the temperature of the Goods. (They are equipped only to maintain temperature.) Merchant will give written notice of requested temperature setting of the thermostatic controls before receipt of the Goods by Carrier. When a container is received, Carrier will verify that the thermostatic controls are set to maintain container temperature as requested. Carrier is unable to determine whether the Goods were at the proper temperature when they were loaded into the container or when the container is delivered to Carrier. If temperature at the unit sensor is maintained within a range of plus or minus 5 degrees Fahrenheit of the temperature requested by the Merchant on the face of this bill of lading, and if the Goods were at that temperature when loaded into the container and if the temperature controls were properly set when the container was loaded, Carrier is not responsible for temperature fluctuations that do not exceed 4 hours duration.
(Carrier shall not be liable for any loss or damage to the Goods arising from latent defects, derangement, breakdown, defrosting, stoppage of the refrigerating, ventilating or any other specialized machinery, insulation and/or apparatus of the Container.)

## 9. DANGEROUS GOODS.
(1) No Goods which are or may become dangerous, inflammable or damaging (including radioactive materials), shall be tendered to Carrier without its express consent in writing, and without the Container as well as the Goods themselves being distinctly marked to indicate the nature and character of any such Goods and so as to comply with all applicable laws, regulations or requirements. If any such Goods are delivered to Carrier without such written consent and/or marking, or if in the opinion of Carrier the Goods are or are likely to become in any way dangerous, inflammable or damaging, they may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to Merchant.
(2) Merchant warrants that the Goods are sufficiently packed in compliance with all laws or regulations and requirements with regard to the nature of the Goods.
(3) Whether or not Merchant was aware of the nature of the Goods, Merchant shall indemnify Carrier against all claims, losses, damages or expenses arising in consequence of the Carriage of such Goods.
(4) Nothing contained in this clause shall deprive Carrier of any of its rights provided for elsewhere.

## 10. LIVE ANIMALS.
Live animals, birds, and fish are received, kept and carried solely at Merchant's risk of accident, disease or mortality and without warranty or undertaking whatsoever by Carrier. Merchant shall indemnify Carrier against any claim, loss, damage or expense related to or arising from the carriage of live animals.

## 11. STOWAGE OF GOODS.
The Goods may be stored by Carrier in Containers or similar articles of transport used to consolidate Goods.
Goods, whether stowed in Containers or not, may be carried on deck or under deck without notice to Merchant unless Merchant specifically stipulated on the face hereof that the Containers or Goods will be carried under deck, and if carried on deck, Carrier shall not be required to note or stamp on the bill of lading any statement of such on deck carriage. Such Goods (other than livestock) whether carried on deck or under deck and whether marked as deck cargo shall be deemed to be within the definition of goods for the purpose of COGSA.

## 12. TRANSSHIPMENT.
If the Goods are destined for a port or destination not served by Carrier or other carriers serving through routes, then the Goods will be transshipped or forwarded at the port of discharge served by Carrier's vessel(s) or other mode of transport. In such case Carrier or participating carriers will have no further duty or responsibility whatsoever as Carrier, this bill of lading operating only as a document of title thereafter.

## 13. NOTIFICATION, DELIVERY AND STORAGE.
Any mention on the face hereof of parties to be notified of the arrival of the Goods is solely for information of Carrier, and failure to provide such notification shall not result in any liability nor relieve Merchant of any obligation hereunder.
Merchant shall take delivery of the Goods as provided for in Carrier's applicable tariff.
If Merchant fails to take delivery of the Goods or part of them in accordance with this bill of lading, Carrier may without notice stow and/or unstow, or store the Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder, and all liability of Carrier in respect of the Goods shall cease.
Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in Carrier's applicable tariff, which is incorporated in this bill of lading.
Carrier may in its absolute discretion receive the Goods as full-container-load and deliver them as less than full-container-load and/or as break bulk cargo and/or delivery the Goods to more than one receiver. In such event Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods, which are found upon unpacking the container.
If the Goods are unclaimed after a reasonable period of time, or whenever, in Carrier's opinion, the Goods will become deteriorated or worthless, Carrier may, at its discretion and subject to its lien without any responsibility attaching to it, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant.
Except at ports where Carrier delivers Goods directly to the consignee, delivery shall take place and Carrier shall have no further responsibility when the Goods are landed upon a safe dock, lighter, or other craft and custody is taken by port, government authority, terminal operator or lighterman.

## 14. EXPENSES, FINES.
Merchant shall be liable for, and shall indemnify Carrier and vessel and hold them harmless against, and Carrier shall have a lien on the Goods for all expenses and charges of mending, coopering, repairing, fumigating, cleaning, disposing, devanning, restowing, storing or reconditioning, and all expenses incurred for the benefit or protection of the Goods, as well as for any payment, duty, fine or other expenses including but not limited to court costs, expenses, and reasonable attorney's fees incurred or levied upon Carrier or the vessel in connection with the Goods because of Merchant's failure to comply with any laws or regulations.

## 15. FREIGHT, LIENS, QUANTITY.
Freight and other charges shall be payable as set forth in Carrier's tariff or service contract. Carrier shall have the right, but not the duty, to open packages or containers and, if Merchant's particulars are found to be erroneous, the Merchant and the Goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring or valuing the Goods.
Full freight to destination and other monies due hereunder, shall be considered completely earned on receipt of the Goods by Carrier, even though the Vessel or Goods are damaged or lost or the voyage is frustrated or abandoned, or whether freight is to be prepaid or collected at destination.
All sums to be payable to Carrier are due when incurred and shall be paid without offset or deduction, in full, in Unites States currency, or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in applicable tariffs.
Merchant shall be jointly and severally liable to Carrier for the performance of the obligations hereunder, including payment of all freight, demurrage, General Average and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than Carrier or its authorized agent, shall not be deemed payment to Carrier and shall be made a payor's sole risk.
Carrier shall have a lien on the Goods for all sums payable to Carrier and for General Average contributions with respect to the Goods as well as Goods previously transported and delivered by Carrier and may, without notice, enforce this lien by public or private sale of the Goods and other property belonging to Merchant which may be in Carrier's possession. The lien shall survive delivery of the Goods.

## 16. BOTH TO BLAME COLLISIONS.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the master, mariner, pilots or of the servants of Carrier in the navigation or in the management of the Vessel, the owners of the Goods carried hereunder will indemnify Carrier against all loss or liability of the non-carrying vessel or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said Goods, paid or payable by the non-carrying vessel or her owners to the owners of said Goods and set-off, recouped, or recovered by the non-carrying vessel or her owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel object other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision, contact, stranding or other accident.

## 17. GENERAL AVERAGE.
General Average shall be adjusted, stated and settled according to York Antverp Rules 1974, except Rule XXII thereof, at the place selected by the Carrier, and as to matters not provided for by these Rules, according to the laws and usage at the port of New York. Average agreement or bond and such additional security as may be required by Carrier, must be furnished before delivery of the Goods.
If Carrier delivers the Goods without obtaining security for General Average contributions, Merchant by taking delivery of the Goods, undertakes personal responsibility to pay such contributions and to provide a cash deposit or other security for the estimated amount of such contributions as Carrier shall reasonably require.
In the event of an accident, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Carrier is not responsible, by statute, contract or otherwise, the Goods and Merchant shall contribute with Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of goods. If a salvaging vessel is owned or operated by Carrier, salvage shall be paid for as fully and in the same manner as if the salvaging vessel belonged to strangers. Merchant shall pay its contribution to General Average even when such average is the result of fault, neglect or error of the master, pilot or crew. Merchant expressly renounces all codes, statutes, laws or regulations which might otherwise apply. Such deposit as Carrier or his agents may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon shall, if required, be made by the Goods and Merchant before delivery.

## 18. FIRE.
Carrier shall not be liable for any loss or damage to Goods occurring at any time, even though before loading on or after discharge from the vessel, by reasons or by means of any Fire whatsoever, unless such Fire shall be caused by the actual fault of the Carrier.

## 19. LIABILITY AND VALUATION.
The Carrier's maximum liability in respect to the Goods shall not exceed US $500 per package or, where the Goods are not shipped in packages, US $500 per customary freight unit unless the nature and higher value of the Goods have been declared by the Merchant herein and said Merchant shall have paid the applicable freight rate set forth in Carrier's Tariff. However, Carrier's liability shall in no event exceed the invoice value of the Goods. The word "package" shall include a container, skid, cradle, pallet or unitized load, group or assemblage. When COGSA does not apply on its own force, the $500.00 limitation shall apply to each shipping customary freight unit or piece, provided always that any compulsorily applicable limitation which is greater than the $500.00 limitation shall apply in place of the $500.00 limitation.

## 20. NOTICE OF CLAIM – TIME FOR SUIT – JURISDICTION.
Unless notice and the general nature of loss or damage be given in writing to Carrier or his agent at the port of discharge before or at the time of the removal of the Goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be the prima facie evidence of the delivery by Carrier of the Goods as described in the bill of lading. If the loss or damage is not apparent the notice must be given within three days after delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of Goods, or the date when the Goods should have been delivered. Such suit shall be deemed brought until jurisdiction shall have been obtained over Carrier and/or the vessel by service of process.

## 21. FINAL AGREEMENT.
All prior agreements, dock receipts or freight engagements for the shipment of the Goods and all other arrangements are superseded by this bill of lading and Carrier's tariff rules and regulations which are incorporated herein by reference. Copies of Carrier's tariffs are available upon request.

## 22. SHIPPER'S WARRANTIES.
Merchant warrants that he is the owner of and entitled to possession of the Goods or has the authority of the owner and all persons entitled to possession of the Goods to agree to the terms hereof.
Merchant warrants to Carrier that the particulars relating to the Goods as set out overleaf have been checked by Merchant on receipt of this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of Merchant are correct. Merchant shall indemnify Carrier against all loss, damage or expense resulting from inaccuracies or inadequacy of such particulars.

## 23. THROUGH AND ON BOARD BILLS OF LADING.
When used in or endorsed on this bill of lading the words "ON BOARD" shall mean on board the exporting vessel or on board another mode of transportation operated by or on behalf of the originating carrier and enroute to the port of loading for loading aboard the participating carrier's vessel.

In the case of through transport, where Carrier has arranged for inland carriage, all limitations and defenses set forth in COGSA shall govern before the Goods are loaded on and after they are discharged from the Vessel, including during portions of inland carriage.

In the event the participating inland carrier's bill of lading together with its rules, tariffs and classifications, and compulsorily applicable laws, shall govern and control the possession and carriage of the Goods by such participating carrier, Carrier, in addition to any rights, defenses, and limitations available under COGSA, shall be entitled to all rights, liens, limitations of liability and rights of indemnity to the full extent permitted to participating carrier under its bill of lading, tariffs, regulations and or any laws relating to carriers, provided that nothing hereunder shall be deemed a waiver of any rights to indemnity or otherwise by Carrier against any participating land or other carrier. Without prejudice to the foregoing, every participating inland carrier shall be entitled to any and all defenses and limitations provided herein for the benefit of the Carrier, as if such provisions were expressly for its benefit.

## 24. CLAIMS.
Claims for loss or of damage to the Goods may be filed against Carrier which agrees to be solely responsible for processing said claims to conclusion. It is agreed that in the event the claim by any such claims by Carrier it shall be automatically be subrogated to all rights of Merchant against all others, including participating carriers on account of such loss or damage. Claims must be filed and suit commenced within the time limits provided by law and the terms of the bill of lading and tariff of the carrier which had or is deemed in accordance with this paragraph to have had custody of the Goods when loss or damage occurred. When the loss or damage occurs during carrier custody or control but it cannot be established which carrier hereunder had custody or control of the Goods at the time of loss or damage it shall be deemed as between Merchant and any carrier hereunder, that the loss or damage occurred aboard the vessel while in custody or control of Carrier.

## 25. LAW AND JURISDICTION.
This bill of lading shall be governed by United States law except as may be otherwise provided for herein. Unless otherwise agreed, any action against Carrier hereunder must be brought exclusively in the United States Federal Court for the Southern District of Florida. Any action by Carrier to enforce any provision herein may be brought before any court of competent jurisdiction at the option of Carrier.